IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| T-M VACUUM PRODUCTS, INC., | § § § | |
| PLAINTIFF | § § | CASE NO. 07-4108 |
| VS. | § § § | |
| TAISC, INC., d/b/a GLOBALEASE SOLUTIONS, | § § § § | |
| DEFENDANT | § | |

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff T-M Vacuum Products, Inc. ("T-M Vacuum") moves for summary judgment, pursuant to Fed.R.Civ.P. 56, on all claims and counterclaims in this lawsuit, and respectfully states:

**Introduction and Summary of Motion**

This lawsuit arises from a three-party transaction in which Plaintiff T-M Vacuum specially manufactured and sold two commercial furnaces to a Kazakhistan mining company, Ulba Metallurgical Plant Joint Stock Company ("Ulba"), the purchase being financed through a lease with Defendant TAISC, Inc., d/b/a GlobaLease Solutions ("GlobaLease") in Houston. The furnaces have been delivered to and accepted by Ulba, which has timely made all payments to GlobaLease. Nevertheless, GlobaLease has failed to pay T-M Vacuum and, on the contrary, asserts that it is entitled to recover an enormous windfall – in effect, forfeiture of the entire purchase price owed to T-M Vacuum while GlobaLease collects the full lease payments from Ulba.

GlobaLease claims that it is entitled to this windfall because of T-M Vacuum's alleged breaches of the Purchase Contract, primarily consisting of delays in delivery of the furnaces.

GlobaLease rests this position on a provision, in a separate agreement between GlobaLease and T-M Vacuum, which provides that upon a "default" in the Purchase Contract, T-M Vacuum must return to GlobaLease that portion of the purchase price that has already been paid. Since the amounts already paid to T-M Vacuum exceed the remaining balance, GlobaLease reasons that it owes nothing further and instead may recover the payments previously made to T-M Vacuum.

The parties dispute whether T-M Vacuum did breach the contract and whether any such breach was excused. However, those issues need not be reached to resolve this case. The default provision on which GlobaLease relies cannot reasonably be interpreted as GlobaLease attempts to do -- requiring forfeiture of the entire purchase price for any breach, whether or not it affects GlobaLease. And if the provision were interpreted in that manner, it would be an unenforceable penalty and thus void. Summary judgment should therefore be rendered against GlobaLease for the remaining purchase price of the furnaces.

### The Three Agreements

This motion is supported by the Affidavit of Fred T. Stuffer, which is attached hereto as Exhibit 1 and incorporated herein by reference. Attached to the Stuffer Affidavit are the three agreements among the parties: (i) a Purchase Contract (between T-M Vacuum and Ulba), (ii) an Equipment Lease Agreement (between Ulba and GlobaLease) and (iii) a Consent and Agreement (between GlobaLease and T-M Vacuum).

GlobaLease's role in this transaction is solely that of a financing party. The Purchase Contract was between T-M Vacuum and Ulba, and GlobaLease assumed that contract only to lease the furnaces to Ulba. GlobaLease neither manufactured nor took possession of the furnaces, nor does GlobaLease maintain the furnaces. *See* Equipment Lease Agreement (Exhibit B to the Stuffer

Declaration) at ¶¶1.4, 1.5, 2.2.

In exchange for financing this transaction (that is, for paying T-M Vacuum to manufacture the furnaces for Ulba), GlobaLease is entitled to receive lease payments from Ulba under the Equipment Lease Agreement. And GlobaLease has received exactly that: Ulba accepted the furnaces and has made each payment as it comes due under the lease. Stuffer Affidavit at ¶¶7, 8. Indeed, GlobaLease admits that Ulba "is not in default under its lease." Original Answer at ¶III(j).

Since Ulba is making all of its lease payments, one may assume that any delay or deficiency regarding the furnaces is immaterial or has been cured to the satisfaction of Ulba. However, Ulba would be obligated to pay GlobaLease even if there were an uncured, material breach of the Purchase Agreement. The Equipment Lease Agreement provides that Ulba must pay GlobaLease whether or not it has a problem with the furnaces. Specifically:

> "Lessee [Ulba] has selected Supplier [T-M Vacuum], and further agrees that the Equipment is in all ways acceptable to Lessee. Lessee and Supplier agree and affirm that any and all issues relating to the Equipment, Equipment condition, and/or Equipment delivery are issues solely between Lessee and Supplier <u>and any such issues shall have no effect on Lessee's payment obligations to Lessor [GlobaLease] nor allow Lessee to delay, suspend or reduce any payments due from Lessee to Lessor</u>."

Equipment Lease Agreement, ¶7 (emphasis added).

In refusing to pay the balance of the purchase price and instead demanding a return of the portion already paid, GlobaLease relies on paragraph 9 of the Consent and Agreement.[1] Stuffer

---

[1] Paragraph 9 is as follows:

"This agreement further contemplates that Lessor [GlobaLease] will be delivering payments to Vendor [T-M Vacuum] prior to and advance of Vendor's manufacture, shipment, export, delivery, installation, and/or acceptance of the Units by Lessee [Ulba]. The parties hereto acknowledge and agree that any such payments made by Lessor to Vendor prior to delivery and final acceptance of the Units by Lessee shall be construed and deemed to be Conditional

Declaration at ¶10, Exhibit F.  According to GlobaLease, this provision means that in the event of any breach on the part of T-M Vacuum (or at least, any breach not cured within fifteen days), GlobaLease is entitled to the full return of that portion of the purchase price already paid – even if T-M Vacuum delivers the furnaces to Ulba and even if Ulba is satisfied with the furnaces and is making its lease payments.  *See* Original Answer at III(a)(i) - (t) ;  Counterclaim by Defendant at II - IV.

### Grounds for Summary Judgment

I.      Paragraph 9 of the Consent and Agreement should not be construed to forfeit the purchase price where, as in this case, the furnaces have been delivered and accepted.

Paragraph 9 provides that the Conditional Payments (*i.e.*, all of the partial payments made to T-M Vacuum before delivery and acceptance of the furnaces) shall be repaid to GlobaLease "in the event of Vendor default under the terms of the Purchase Agreement or hereunder . . . if such default continues uncured for a period of more than fifteen days."

The term "default" is not defined, either in the Consent and Agreement or in the Purchase Contract.  GlobaLease apparently interprets "default" to include any breach or deficiency under the Purchase Contract, whether or not it is cured to the satisfaction of Ulba and whether or not it affects the lease payments to be received from Ulba.  This term need not be so harshly construed, however.

---

Payments from Lessor.  In the event of Vendor default under the terms of the Purchase Agreement or hereunder, it is expressly agreed and understood that Vendor shall immediately repay upon demand all previously received Conditional Payments to Lessor if s uch a default continues uncured for a period of more than fifteen days.  Such repayment shall be with interest calculated at one percent per month from the date each Conditional Payment was delivered to Vendor as if such Conditional Payments were originally a loan to Vendor."

  Consent and Agreement, Exhibit C to the Stuffer Declaration, at ¶9.

A more reasonable construction would limit "default" to the situation in which T-M Vacuum wholly fails to deliver the furnaces to Ulba. Ulba presumably would be excused from making lease payments if the leased equipment were never delivered. But any lesser breach, such as a delay in delivery, would not affect Ulba's liability to GlobaLease and thus would not affect GlobaLease. *See* Equipment Lease Agreement at ¶7, discussed *supra* at 3. The sort of "default" requiring repayment of the Conditional Payments should thus be construed to mean only such failure as would affect GlobaLease, namely, the failure to complete and deliver the furnaces.

A contract should be construed, whenever possible, to avoid unreasonable and inequitable results. Contracts should be construed "from a utilitarian standpoint bearing in mind the particular business activity sought to be served" so as to "avoid when possible and proper a construction which is unreasonable, inequitable, and oppressive." *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex.1987); *see also Frost Nat'l Bank v. L&F Distributors, Ltd.*, 165 S.W.3d 310, 311 (Tex. 2005).

If GlobaLease's interpretation were correct, T-M Vacuum would forfeit the entire purchase price after manufacturing and delivering the furnaces. Such a construction must be avoided if at all possible. "Courts will not declare a forfeiture unless they are compelled to do so by language which can be construed in no other way." *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d at 530; *see also G. C. Murphy Co. v. Lack*, 404 S.W.2d 853, 858 (Tex.Civ.App. – Corpus Christi 1966, writ ref'd n.r.e.)("The courts do not favor forfeitures and unless compelled to do so by language that will admit to no other construction, forfeiture will not be enforced.").

Finally, it should be noted that GlobaLease drafted the Consent and Agreement. Stuffer Declaration at ¶5. It is a long-standing principle of contract construction that any ambiguity should be construed against the drafter, who after all is the one responsible for the language. *See, e.g.,*

*Southern Disposal, Inc. v. City of Blossom*, 165 S.W.3d 887,896 (Tex.App. – Texarkana 2005, no pet.).

The Court should therefore construe Paragraph 9 so as to avoid the forfeiture sought by GlobaLease in this case. There being no other defense to payment of the purchase price of the furnaces, summary judgment should be rendered for the balance owed, $621,439.00. Stuffer Declaration at ¶9, Exhibit E (unpaid invoices).

> II.  <u>If Paragraph 9 were construed to require forfeiture of the purchase price, it would be an unenforceable penalty and thus void</u>.

The term "liquidated damages" has its origin in the common law of contracts, where it refers to an acceptable measure of damages that the parties stipulate in advance will be assessed in the event of a breach. *Flores v. Millennium Interests, Ltd.*, 185 S.W.3d 427, 431 (Tex. 2005). "If damages for the prospective breach of a contract are difficult to measure and the stipulated damages are a reasonable estimate of actual damages, then such a provision is valid and enforceable as 'liquidated damages;' otherwise it is void as a 'penalty.'" *Flores, supra, citing Phillips v. Phillips*, 820 S.W.2d 785, 788 (Tex.1991); *see also Stewart v. Basey*, 245 S.W.2d 484, 485-86 (Tex. 1952).

The same principle has been adopted in the Uniform Commercial Code with respect to sales of personal property, such as the sale of furnaces at issue in this lawsuit. Section 2.718(a) provides:

> "Damages for breach by either party may be liquidated in the agreement but only at an amount which is reasonable in the light of the anticipated or actual harm caused by the breach, the difficulties of proof of loss, and the inconvenience or non-feasibility of otherwise obtaining an adequate remedy. <u>A term fixing unreasonably large liquidated damages is void as a penalty</u>."

Tex.Bus.&Com.Code §2.718(a)(emphasis added).

Paragraph 9 is, in effect, an attempt at liquidating the damages that will be owed in the event

of a "default" by T-M Vacuum. It provides that in the event of default, GlobaLease is entitled to recover the entire amount of Conditional Payments. Such a provision could be valid only if the measure of damages were reasonable. If not, the provision calls for a penalty and it is therefore void and unenforceable. It does not matter that the provision might produce a reasonable result in some limited circumstances – for example, if T-M Vacuum had failed to complete and deliver either of the furnaces. "A provision becomes a penalty if it provides for unreasonable damages for trivial breaches as well as reasonable damages for major breaches." *Community Development Service, Inc. v. Replacement Parts Mfg., Inc.*, 679 S.W.2d 721, 727 (Tex.App. – Houston [1st Dist.] 1984, no pet.).

It would be difficult to imagine a more punitive measure of damages than that contained in paragraph 9 of the Consent and Agreement. If construed as GlobaLease contends, it amounts to a forfeiture of the entire purchase price for goods that have been accepted by the purchaser and for which GlobaLease is being paid in full.

Whether a provision is a valid liquidated damages clause or a void penalty is a question of law. *E.g., Baker v. International Record Syndicate, Inc.*, 812 S.W.2d 53, 54 (Tex.App. – Dallas 1991, no pet.). If the Court were to adopt GlobaLease's construction of Paragraph 9, it follows that the provision is a penalty and thus void. There being no other defense to payment of the purchase price of the furnaces, summary judgment should be rendered for the balance owed, $621,439.00.

III.   Interest and Attorney's Fees

The Purchase Contract does not provide an interest rate for past-due installments of the purchase price. Pursuant to Tex.Fin.Code §302.002, T-M Vacuum is thus entitled to recover six percent (6%) per annum pre-judgment interest on each invoiced installment, commencing thirty days after it was due, to the date of judgment.

_____T-M Vacuum made written demand for payment of sums due before filing this lawsuit. Stuffer Declaration at ¶9. Pursuant to Tex.Civ.Prac.&Rem.Code §38.001 *et seq*., T-M Vacuum is thus entitled to recover its reasonable attorney's fees.

In the event that summary judgment is granted, T-M Vacuum requests the opportunity to file a supplemental submission regarding the calculation of pre-judgment interest and the amount of its reasonable attorney's fees. ___

WHEREFORE, Plaintiff/Counter-Defendant T-M Vacuum Products, Inc. prays that the Court grant summary judgment, pursuant to Fed.R.Civ.P. 56, that Plaintiff recover the balance of the purchase price of the two furnaces, $621,439.00, together with prejudgment interest, reasonable attorney's fees, costs of court, and post-judgment interest on all sums awarded.

        Respectfully submitted,

        _____/s/ H. Miles Cohn_____
        H. Miles Cohn
        Texas Bar No. 04509600
        1001 McKinney Street, Suite 1400
        Houston, Texas 77002-6420
        Telephone: (713) 374-7020
        Facsimile: (713) 374-7049
        **ATTORNEY-IN-CHARGE FOR T-M VACUUM PRODUCTS, INC., PLAINTIFF/COUNTER-DEFENDANT**

OF COUNSEL:

Michelle V. Friery
Texas Bar No. 24040934
Sheiness, Scott, Grossman & Cohn, LLP
1001 McKinney St., Suite 1400
Houston, Texas 77002-6420
Telephone: (713) 374-7020
Facsimile: (713) 374-7049
**ATTORNEYS FOR PLAINTIFF/COUNTER-DEFENDANT**

**CERTIFICATE OF SERVICE**

    I do hereby certify that a copy of the foregoing Plaintiff's Motion for Summary Judgment has been forwarded, via United States certified mail, return receipt requested, on this the 23rd day of January, 2008, to Defendant/Counter-Plaintiff's attorney of record:

Thomas G. Bousquet
9225 Katy Freeway, #103
Houston, Texas 77024
Facsimile (713) 827-0096

                                                  /s/ H. Miles Cohn
                                                    H. Miles Cohn