IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| T-M VACUUM PRODUCTS, INC. | § | |
|     Plaintiff | § | |
| | § | |
| V. | § | CIVIL ACTION NO.07-4108 |
| | § | **JURY** |
| | § | |
| TAISC, INC. d/b/a GLOBALEASE | § | |
| SOLUTIONS | § | |
|     Defendant | § | |

DEFENDANT'S MEMORANDUM IN RESPONSE
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Defendant, **TAISC, INC. d/b/a GLOBALEASE SOLUTIONS** asks the court to deny Plaintiff's motion for summary judgment.

A. Introduction

1.  Plaintiff is **T-M VACUUM PRODUCTS, INC.**; Defendant is **TAISC, INC. d/b/a GLOBALEASE SOLUTIONS**.

2.  On December 5, 2007, Plaintiff sued Defendant for a balance due under written contracts.

3.  On January 2, 2008, Defendant filed its answer, defensive pleadings and counterclaim for offsets and credits due to Defendant under the written contracts.

4.  On January 23, 2008, Plaintiff filed a motion for summary judgment on its cause of action for debt.

5.  Summary judgment is improper in this case because there are genuine issues of

\\192.168.2.10\users\firmdocs\Law\Wpdocs\BERRY\T-M VAC\RESPONSE TO PLN MSJM.3.wpd     1

material fact on the following elements of Plaintiff's cause of action for a balance due pursuant to three written contracts:

    a)    Did Plaintiff breach the clear material terms of the contracts by failing to ship the first Furnace Unit ( see Purchase Contract paragraph 4.1) until December 22, 2006, 6 months late, and later the second Furnace Unit was shipped on June 15, 2007, 11 months late, and failing to return the Conditional Payments and pay interest thereon to Defendant following written demand by Defendant on or about November 8, 2006 (see Exhibit 1 to John Berry's affidavit) pursuant to paragraph 9 of the Consent and Agreement, *i.e.*, the contract terms?

    b)    Did Plaintiff have a valid excuse for such material breaches?

    c)    Were Defendant's actions justified due to Plaintiff's prior material breach?

    d)    As Defendant never excused or waived Plaintiff's breach of failing to timely deliver the two Furnace Units and Plaintiff failed to honor the terms of paragraph 9 of the Consent and Agreement, did Plaintiff breach the contract terms?

The Consent and Agreement in paragraph 9 provides:

> This Agreement further contemplates that Lessor will be delivering payments to Vendor prior to and advance of vendor's manufacture, shipment, export, delivery, installation, and/or acceptance of the Units by Lessee. The parties hereto acknowledge and agree that any such payments made by Lessor to Vendor prior to delivery and final acceptance of the Units by Lessee shall be construed and deemed to be Conditional Payments from Lessor. In the event of Vendor default under the terms of the Purchase Agreement or hereunder, it is expressly agreed and understood that <u>Vendor shall immediately repay upon demand all previously received Conditional Payments to Lessor</u>

>> *if such default continues uncured for a period of more than fifteen days*. Such repayment shall be with interest calculated at one per cent per month from the date such Conditional Payment was delivered to Vendor *as if such Conditional Payments were originally a loan to Vendor* (emphasis added).

    e)    Does Plaintiff have a valid basis for not crediting Defendant with the interest provided for in the Consent and Agreement, for not giving Defendant any offsets and credits, or for not paying Defendant's attorney's fees?

    f)    Because Plaintiff has not shown that Ulba has waived its damages against Defendant (its Lessor) for the late delivery of two Furnace Units, does Plaintiff's claim that its breach was immaterial, collapse?

    g)    If Defendant never consented to the terms of the Supplementary Agreement No. 3, nor the execution by ULBA of same, both of which are vital to Plaintiff's claim, does Plaintiff's claim that its breach was immaterial, collapse?

    h)    Is Defendant entitled to full indemnity from Plaintiff for its attorney's fees and costs under paragraph 7 of the Consent and Agreement and because of Plaintiff's breach of contract?

    i)    Because Plaintiff's corporate charter was cancelled by the State of New Jersey for failure to pay franchise tax on October 4, 2005, as shown by the exhibit 4 to John Berry's affidavit attached hereto (Violation of paragraph 5 of the Consent and Agreement) did Defendant have a valid reason not to pay Plaintiff until the Charter was re-instated on February 23, 2006?

### B.  Statement of Facts

6.  A statement of genuine issues in addition to those set out above, is attached hereto as Exhibits "A" and "B", as required by Local Rules.

### C.  Standard of Review

7.  Although summary judgment is proper in a case where there is no genuine issue of material fact, this is not a case in which the court should grant summary judgment. *See* Fed. R. Civ. P. 56 (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

8.  A plaintiff moving for summary judgment must satisfy its burden by submitting summary judgment proof that establishes all elements of its cause of action as a matter of law.  *San Pedro v. United States*, 79 F.3d 1065, 1068 (11th Cir. 1996).  This burden is satisfied only if, after viewing the evidence in the light most favorable to defendant, no genuine issues of material fact exist and no reasonable trier of fact could find in favor of defendant.

9.  In determining whether there is a disputed issue of material fact that prevents summary judgment, the court must consider all evidence in the light most favorable to defendant as the nonmovant.  *Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1236-37 (10th Cir. 2002).  The court must also resolve all reasonable doubts about the facts in favor of the defendant as nonmovant.  *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 456 (5th Cir. 2005).

D. Argument

10. Plaintiff must prove the essential elements listed, in Paragraph 5 above, to sustain a claim for money owed under a contract materially breached by Plaintiff against Defendant. Because there are material fact issues on the elements of Plaintiff's breach and on Plaintiff's failure to pay setoffs and credits to Defendant against any amount owed by Defendant following November 8, 2006, Plaintiff is not entitled to summary judgment in this case.

11. The Court should understand that for 16 months (June 5, 2006 until October 5, 2007) Defendant had no idea whether BOTH of the Furnace Units would ever be delivered, when they would be delivered, and if they would be tested and <u>accepted</u> by Ulba if finally delivered. Defendant was further faced with the fact that Plaintiff was breaching the contract by failing to refund the Conditional Payments, plus interest, to Defendant in November 2006. The contracts and accompanying documents were clear, simple, and negotiated without duress on any party.

E. Law

12. The Texas Supreme Court reiterated the rules governing the interpretation and construction of contracts in *Coker v. Coker*, 650 S.W.2d 391, 393--94 (Tex.1983). The court's primary concern when construing a contract is to ascertain the true intentions of the parties as expressed in the document and to achieve this objective, the court examines and considers the entire writing in an effort to harmonize and give effect to all of its provisions

so that no provision will be rendered meaningless. *Lopez v. Mutoz, Hockema, & Reed*, 22 S.W.3d 857 (Tex 2000); *Coker* at 393; *R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518 (Tex.1980); *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex.1968); *Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 243 S.W.2d 154, 158 (1951) . In construing a contract, the court first determines whether it is possible to enforce the contract as written, without resort to parol evidence. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex.2003); *Harris v. Rowe,* 593 S.W.2d 303, 306 (Tex.1979).

A contract is ambiguous *only* if its meaning is uncertain or doubtful or it is reasonably susceptible to more than one meaning. *J.M. Davidson, Inc. V. Webster*, 128 S.W.3d 223, 229 (Tex. 2003)*; Coker* at 393. Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in the light of the circumstances present when it was entered. *Coker* at 394. If a contract is worded so that it can be given a certain or definite legal meaning, then it is not ambiguous, and the construction of the contract is for the court applying the rules of contract construction. *J.M. Davidson, Inc. V. Webster*, 128 S.W.3d 223, 229 (Tex. 2003); *Coker* at 393; *R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518 (Tex.1980); *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex.1996); *Friendswood Dev. Co. v. McDade Co.*, 926 S.W.2d 280, 282 (Tex.1996).

Ambiguity does not arise simply because the parties advance conflicting

so that no provision will be rendered meaningless. *Lopez v. Mutoz, Hockema, & Reed*, 22 S.W.3d 857 (Tex 2000); *Coker* at 393; *R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518 (Tex.1980); *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex.1968); *Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 243 S.W.2d 154, 158 (1951) . In construing a contract, the court first determines whether it is possible to enforce the contract as written, without resort to parol evidence. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex.2003); *Harris v. Rowe,* 593 S.W.2d 303, 306 (Tex.1979).

A contract is ambiguous *only* if its meaning is uncertain or doubtful or it is reasonably susceptible to more than one meaning. *J.M. Davidson, Inc. V. Webster*, 128 S.W.3d 223, 229 (Tex. 2003)*; Coker* at 393. Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in the light of the circumstances present when it was entered. *Coker* at 394. If a contract is worded so that it can be given a certain or definite legal meaning, then it is not ambiguous, and the construction of the contract is for the court applying the rules of contract construction. *J.M. Davidson, Inc. V. Webster*, 128 S.W.3d 223, 229 (Tex. 2003); *Coker* at 393; *R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518 (Tex.1980); *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex.1996); *Friendswood Dev. Co. v. McDade Co.*, 926 S.W.2d 280, 282 (Tex.1996).

Ambiguity does not arise simply because the parties advance conflicting

interpretations of the contract. *Columbia Gas,* 940 S.W.2d at 589; *National Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex.1995). Likewise, lack of clarity does not create an ambiguity. *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex. 1994). Not every difference in the interpretation of a contract amounts to an ambiguity. See *Universal Health Servs., Inc. v. Renaissance Women's Group, P.A.*, 121 S.W.3d 742, 746 (Tex. 2003).

Courts have long recognized that parties are free to contract as they choose and that they may protect themselves by requesting literal performance of their contractual conditions for final payment. *TA Operating v. Solarapplications*, 191 S.W.3d 173, 181 (Tex.App.– San Antonio 2005, no writ)(citing 8 CORBIN ON CONTRACTS § 36.2 ("Theoretically, at least, people are free to contract as they choose, limiting their rights and duties in ways that are unusual or absurd or unprofitable.")). Courts have further acknowledged that harsh and unprofitable results may follow from the parties' free exercise of choosing their own contract terms. *TA Operating* at 181 (court recognized the harsh results occasioned from Solar's failure to perform the express condition precedent in the contract).

If a contract is ambiguous, a fact issue exists on the parties' intent that may be properly submitted to the trier of fact. See *J.M. Davidson, Inc.*, 128 S.W.3d at 229; *Universal Health Servs., Inc. v. Renaissance Women's Group, P.A.*, 121 S.W.3d 742, 746 (Tex. 2003). If the contract is not susceptible to more than one meaning, ie. unambiguous, then the court enforces it as written and as a matter of law.

### F. Objections

13.     The affidavit submitted in support of Plaintiff's motion should not be considered by the court because it is neither properly authenticated nor admissible. The court should strike the defective affidavit. The affiant lacks personal knowledge of certain facts the affidavit supports and includes opinion testimony and impermissible hearsay.

Plaintiff relies on the affidavit of a lay witness who is an interested witness. This testimony is not corroborated and contains contradictory facts. The exhibits D-1 and D-2 are not sworn or certified and certainly don't state correctly what Plaintiff alleges that they contain. Further the affidavit doesn't mention offsets and credits which should have been given to Defendant. Additionally, Supplementary Agreement No. 3 dated May 22, 2007, was not signed or approved by Defendant and should not be considered as any part of an agreement binding upon Defendant.

Additionally, the top paragraph on page 5 of Plaintiff's Motion for Summary Judgment admits that the Conditional Payments should have been returned by Plaintiff to Defendant.

### F.  Summary Judgment Evidence

14.     In support of its response, Defendant includes the attached affidavit of John Berry marked Exhibit "C" with exhibits, and (a) the Purchase Contract (excluding Supplementary Agreement No. 3), (b) the Lease and (c) the Consent and Agreement attached by Plaintiff to its Motion.

### G.  Attorney Fees

15. Plaintiff is not entitled to attorney fees incurred in prosecuting this suit because Defendant did not breach the contracts and is not accused of breaching the contract; however, Plaintiff is and did. Defendant's position is that the two Defaults by Plaintiff <u>were</u> material and generated offsets and credits in favor of Defendant under the clear terms of the contract quoted above. Because of Plaintiff's failure to follow the contract terms, nothing Defendant did or failed to do constituted a breach of a contract by Defendant.

16. The court should not take judicial notice of the usual and customary attorney fees in this district.

### H.  Conclusion

17. The Plaintiff is not entitled to a summary judgment for the reasons shown. Defendant did not breach the contracts.  The Plaintiff refuses to acknowledge that its own breach of the contracts were material and generated offsets and credits against any balance due on the purchase price of the Furnace Units.  Defendant asks the court to deny Plaintiff's motion for summary judgment.

Respectfully Submitted

BOUSQUET & DEVINE, P.C.  
Of Counsel

　　　　/s/ Thomas G. Bousquet　　　　  
Thomas G. Bousquet  
ATTORNEY AT LAW  
Federal Court No. 3285  
State Bar # 02717000  
9225 Katy Freeway #103  
Houston, Texas 77024  
(713) 827-8000  
(713) 827-0096 (fax)

ATTORNEY FOR DEFENDANT

CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that a true and correct copy of the above instrument has been served, pursuant to Federal Court Rules by First Class U.S. Mail, Return Receipt Requested, postage pre-paid and properly addressed, all as shown by the attached Service List, on this ___4th_ day of _February___, 2008.

H. MILES COHN
ATTORNEY

                                          ____/s/ Thomas G. Bousquet_____
                                          Thomas G. Bousquet

EXHIBIT "A"
STATEMENT OF GENUINE ISSUES

Plaintiff states no controversy exists in many places, however, many allegations are disputed

by Defendant as follows:

1) Did Defendant breach any term of the written contracts? Defendant would show that Defendant was entitled under the contract terms to:
   a) Declare Plaintiff in default for failing to timely ship the Furnace Units (para. 9 Consent and Agreement);
   b) Demand return of the Conditional Payments of principal previously advanced in Nov. 2006, plus 12% interest per annum pursuant to paragraph 9 of the Consent and Agreement; and
   c) Negotiate with Plaintiff for the application of credits and offsets in favor of Defendant to determine the correct amount if any, due to Plaintiff, including reimbursing Defendant for its attorney's fees.;
   d) Show that Defendant did not breach the terms of the contracts.

2) Whether T-M Vacuum (hereinafter "T-M") defaulted, without just cause or valid excuse; on the contracts by shipping the first furnace on December 22, 2006, instead of June 7, 2006, and the second one was shipped on June 5, 2007 when it was contractually promised to be shipped on July 5, 2006?

3) Whether T-M lacked a valid excuse including under the force majeure clause of paragraph 11 of the Purchase Contract, as T-M never properly notified Defendant of any valid excuse and never invoked the doctrine of force majeure (as required by paragraph 11.2) following written notice of default by Defendant on November 8, 2006? (Plaintiff never responded.)

4) Whether because T-M failed to invoke the force majeure doctrine under paragraph 11 of the Purchase Contract, it cannot raise it at this time?

5) Whether Plaintiff breached the terms of Paragraph 9 of the Consent and Agreement, which provides for Conditional Payments to be returned by Plaintiff to Defendant upon written demand by Defendant (which demand was made in November 8, 2006 as shown by Exhibit 1 to John Berry's affidavit)?

6) Whether the terms of Paragraph 9 of the Consent and Agreement provide for interest on the Conditional Payments to be paid by Plaintiff to Defendant, upon written

   request by Defendant?

7) Whether Defendant is the holder of legal title to the furnaces, and not merely a lender?

8) Whether the terms of Paragraph 2 of the Consent and Agreement provide that the default by Plaintiff can not be waived without the written consent of Defendant?

9) Whether such written consent was ever given by Defendant since Plaintiff does not allege that it was given?

10) Whether T-M was in breach of the contracts regarding delivery of the Furnace Units to Ulba, and never paid Defendant (nor credited Defendant) for interest on the Conditional Payments, for damages for such breach or for Defendant's attorney's fees incurred due to T-M's breach of the contract and in protecting Defendant's rights under the contracts?

11) What recourse will Defendant have if Ulba quits paying its lease payments due to its damages incurred by the late delivery by Plaintiff?

12) Whether failure to ship the two Furnace Units to Ulba for 6 and 11 months respectfully, is an un-excused violation of the contracts terms and is "immaterial" as alleged by Plaintiff in its Motion?

13) Is there any "ambiguity" in the contract language as alleged by Plaintiff in its Motion?

14) Does "default" need to be defined in the written contracts or would failure to ship the Furnace Units, without excuse, for 6 and 11 months respectfully from the contractually agreed dates, and without payment of contractual interest, be default under all interpretations?

15) Do the contracts need to be "construed" as alleged by Plaintiff in its Motion, or do they just need to be enforced as written?

16) Did T-M sign the contracts willingly and without duress, and thereafter breach the contracts by failing to timely ship the Furnace Units for 6 and 11 months, and by failing to return the Conditional Payments, plus interest, to Defendant as contracted with Defendant?

17) Should T-M be bound by the clearly written set of agreements governing a $3 million international sale\lease between the parties?

18) Was Ulba under duress when delivery of the Furnace Units were finally promised on May 22, 2007and it was required by Plaintiff to sign the Supplementary Agreement No. 3- considering that if the Units were never delivered, Ulba executives faced jailing by the Republic of Kazakhstan government (see Exhibit 3 attached to John Berry affidavit)?

19) Plaintiff alleges that Defendant failed to make some payments to it on a timely basis in late 2005 and early 2006 . The true facts are that Plaintiff's corporate charter was forfeited by the state of New Jersey from October 4, 2005 to February 23, 2006 (see exhibit 4 to John Berry's affidavit)   and Defendant was not required contractually to send its payments to Plaintiff when its corporate charter was forfeited (see paragraph 5 of the Consent and Agreement)?

20) Is Defendant entitled to full indemnity including attorney's fees from Plaintiff pursuant to Paragraph 7 of the Consent and Agreement?

21) Has Plaintiff ever issued a Bill of Sale as required under paragraph 3 of the Consent and Agreement?

22) Does Paragraph 10.2 of the Purchase Contract specify, "The Contract shall be fulfilled exactly in accordance with its terms and conditions?"

EXHIBIT "B"
ALLEGATIONS BY PLAINTIFF WHICH ARE UNTRUE

1) Defendant has failed to pay Plaintiff timely.

2) Defendant was seeking an enormous windfall.

3) Plaintiff did not breach the contract terms.

4) The provisions of Paragraph 9 of the Consent and Agreement are an unenforceable penalty.

5) Defendant receives the lease payments from Ulba, as they are paid direct to Wells Fargo Bank that funded the purchase price.

6) The delay in shipments by Plaintiff was "immaterial."

7) Defendant was not entitled to be concerned by the 16 month delay in delivery and acceptance of the Furnace Unit and its effect on Defendant's lease with Ulba.

8) Paragraph 9 of the Consent and Agreement needs "interpretation" or is "ambiguous."

9) Whether the Conditional Payments are conditional.

10) That the word "default" needed to be defined?

11) That Ulba and Plaintiff could modify the terms of the Agreement without the consent of Defendant (referring to the Supplementary Agreement No. 3 on May 22, 2007).

12) Whether there was consideration for the Supplementary Agreement No. 3?

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| T-M VACUUM PRODUCTS, INC. | § | |
|     Plaintiff | § | |
| | § | |
| V. | § | CIVIL ACTION NO.07-4108 |
| | § | **JURY** |
| | § | |
| TAISC, INC. d/b/a GLOBALEASE | § | |
| SOLUTIONS | § | |
|     Defendant | § | |

ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

After considering plaintiff 's motion for summary judgment, the response, and all other evidence on file *and after a hearing,* the court FINDS genuine issues of material fact. Therefore, the court DENIES the motion.

SIGNED on _____, 2008.

_____
_____
U.S. DISTRICT JUDGE

APPROVED & ENTRY REQUESTED:

    /s/ Thomas G. Bousquet
Thomas G. Bousquet