**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **T-M VACUUM PRODUCTS, INC.** | § | |
| | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| | § | |
| | § | **CIVIL ACTION NO.07-4108** |
| **V** | § | |
| | § | **JURY** |
| | § | |
| | § | |
| **TAISC, INC. d/b/a GLOBAL** | § | |
| **LEASE SOLUTIONS** | § | |
| | | |
| **Defendant** | | |

DEFENDANT COUNTER PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION OF COURTS ORDER

Defendant\Counter Plaintiff asks the court to set an oral hearing and on such hearing to set aside its opinion of May 15, 2008, as authorized by Federal Rule of Civil Procedure 59 and either have a trial of the case or remand the matter to Arbitration in accordance with Paragraph 10 of the Purchase Contract..

A. Introduction

1. Plaintiff filed suit without utilizing the terms of Paragraph 10 of the Purchase Contract. Plaintiff\counter defendant is T-M VACUUM PRODUCTS, INC.; defendant\counter plaintiff is TAISC INC.

2. Without notice, Plaintiff sued defendant for debt under three written contracts. Defendant\counter plaintiff counter claimed against Plaintiff for breach of the three contracts, debt and stipulated interest due under a written contract, attorney's fees and costs.

3. The court rendered summary judgment in favor of Plaintiff on plaintiff's claim and against Defendant's counter claim without oral arguments. Defendant earnestly requests this court set oral argument on the summary judgment and set aside its order following the arguments.

4. The court rendered its opinion on May 15, 2008. Defendant\counter plaintiff files this motion on May 27, 2008, which is prior to the June 10, 2008 motion docket.

B. Manifest Errors of Law and Facts

5). The court should set aside its opinion because the court committed manifest errors of law and fact. *Brown v. Wright*, 588 F.2d 708, 710 (9th Cir. 1978).

6) A plaintiff moving for summary judgment must satisfy its burden by submitting summary judgment proof that establishes all elements of its cause of action as a matter of law. *San Pedro v. United States*, 79 F.3d 1065, 1068 (11th Cir. 1996). This burden is satisfied only if, after viewing the evidence in the light most favorable to defendant, no genuine issues of material fact exist and no reasonable trier of fact could find in favor of defendant. *Walmart v*

*Rodriguez,* 92 SW3rd 502 (Tex 2002). The inferences that are in favor of the non-movant, trump all other inferences that may exist. *Orangefield I.S.D. v Callahan,* No. 09-00-171-CV, 2001 Tex (Beaumont-2001). Defendant attached a list of fact issues to its Response to Plaintiff's Motion for Summary Judgment as exhibit 1. Most of these issues remain unresolved which should prevent the granting of the summary judgment.

7). In determining whether there is a disputed issue of material fact that prevents summary judgment, the court must consider all evidence in the light most favorable to defendant as the non-movant. *Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1236-37 (10th Cir. 2002). The court must also resolve all reasonable doubts about the facts in favor of the defendant as non movant. *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 456 (5th Cir. 2005). This court has resolved the doubts on material issues in favor of the moving party, an error of law which must be corrected.

8) Courts have long recognized that parties are free to contract as they choose and that they may protect themselves by requesting literal performance of their contractual conditions for final payment. *TA Operating v. Solarapplications*, 191 S.W.3d 173, 181 (Tex.App.– San Antonio 2005, no writ)(citing 8 CORBIN ON CONTRACTS § 36.2 ("Theoretically, at least, people are free to contract as they choose, limiting their rights and duties in ways that are unusual or absurd or unprofitable."). Courts have further acknowledged

that harsh and unprofitable results may follow from the parties' free exercise of choosing their own contract terms. *TA Operating* at 181 (court recognized the harsh results occasioned from Solar's failure to perform the express condition precedent in the contract).

If a contract is ambiguous, a fact issue exists on the parties' intent that may be properly submitted to the trier of fact. See *J.M. Davidson, Inc.*, 128 S.W.3d at 229; *Universal Health Servs., Inc. v. Renaissance Women's Group, P.A.*, 121 S.W.3d 742, 746 (Tex. 2003). If the contract is not susceptible to more than one meaning, ie. unambiguous, then the court enforces it as written and as a matter of law.

9) This court has stated (opinion pg. 15, 16 & 17) that Defendant was not damaged by Plaintiff's actions and failures, which has to include Plaintiff's failure in November 2006 to pay the interest on the $2.7 million Conditional Payments to Defendant. The contract does not require that Defendant be damaged before the interest is paid to Defendant. The contract only required Plaintiff to fail to correct its failure to timely deliver the Furnaces following 15 days notice by Defendant. If the Plaintiff fails to correct its default, the contract states with **no** qualification that the interest on the Conditional Payments is to be paid by Plaintiff to Defendant. How can the court say that failure to pay Defendant approximately $484,000.00 in interest did not damage Defendant? The court even alludes in its opinion (at page 11) that the contract is not ambiguous. The Conditional Payment and any net sums due to Plaintiff would

have been repaid to Plaintiff in October 2007, when the actual delivery of the second furnace took place and additionally was accepted by ULBA. It is not reasonable to say that Supplement No. 3, dated in May of 2007, without Defendant's required consent, waived defaults by Plaintiff that occurred eleven months previous in time (See paragraph 2, Consent and Agreement). Is not Defendant damaged when Plaintiff files a law suit rather then attempting to settle under the terms of the contract (i.e. arbitration)?

Paragraph 7.8 of the Lease reads

"All amendments and supplements to the agreement shall be made in written form and are an integral part of the agreement and have equal legal effect only upon their signature and sealing by authorization of the Parties"

NOTE: "Parties is a defined term under Glossary 1.2:

"1.2 Parties- Lessor, Lessee or Supplier, at the use of the term collectively to all participants of the agreement."

10) The court erred in stating (opinion pages 13, 14 & 15) that Defendant or ULBA should have cancelled the contracts. Under the Court's Opinion, Defendant and ULBA must either cancel the contract or accept both (a) the Plaintiff's breach of timely delivery and also (b) Plaintiff's failure to pay Defendant the interest set out in the contract.

Paragraph 7.3 of the lease covers this point fully:

" Failure to fulfill obligations under the Agreement because of the circumstances beyond

the Parties control shall not result in the termination of the obligations under the Agreement or possible cancellation of this Agreement."

Besides the above terms which prevent Defendant and ULBA from having to cancel the contract, the contract, being a normal international sales contract, had provisions to cover all contingencies. If Plaintiff was late in delivery of the furnaces, the contract did not contemplate that the contract had to be cancelled. In such event, if Plaintiff did not exercise its rights under the force majeure clause of paragraph 11 of the Purchase Contract, then the Plaintiff was to return the Conditional Payments (Note: they are called "Conditional Payments") to Defendant with interest and then one of three things would happen:

(1) ULBA would cancel the contract, Plaintiff would retain possession of the furnace and Defendant would have been made whole by the return of the Conditional Payments, or,

(2) ULBA would beg Plaintiff to deliver the furnaces (afraid of the three year prison sentences for its officers as revealed in Berry's Exhibit A to his affidavit). Plaintiff would return the Conditional Payments to Defendant plus interest. Then, at the time of ULBA's accepted delivery and successful testing, the Conditional Payments would be sent back to Plaintiff by Defendant and the balance of the purchase price would be paid to Plaintiff by Defendant, with Defendant keeping the interest, or

(3) the matter would be settled by the parties or sent to arbitration under paragraph 10 of the Purchase Contract. These are the plain language terms of the parties. Signed, sealed and delivered. No ambiguity. Everyone would be expected to abide by their written word. The

parties contracts and agreements should be enforced as written.

11) The Court has erroneously stated (opinion pages 7 & 11) that Defendant would keep the Conditional Payment plus interest, which is **not** what Defendant is seeking. Defendant is satisfied with an offset of the contractually agreed interest plus payment of Defendant's attorneys fees caused by the :

(a) breaches of the contract by Plaintiff ,

(b) the indemnity provisions of the Consent and Agreement paragraph 7 which indemnifies Defendant in the event of a suit being filed against Defendant and most importantly,

© Plaintiff's brought a law suit rather than utilizing the settlement and arbitration provisions of the Purchase Contract, paragraph 10, to settle its dispute.

12) The court (opinion pages 12 &16) refers several times to "Exhibit B at 6" for the proposition that the Exhibit says nothing would affect payments to (Plaintiff) " Supplier". However, the paragraph states that it will not affect payments to "Lessor" (Defendant) . This paragraph does not say anything about payments from Lessor to Supplier and the court's opinion errs in stating that this somehow excuses T-M'S non payment of interest to Defendant.

13) A reading of pages 1-5 of the court's opinion would seem to find for Defendant on a clearly written contract. That is, until the last two lines on page 5, where the court ignores

the fact that the first furnace shipment was made five months <u>before</u> the date of the signing of Supplement No. 3 , which date was also less than 30 days before the second furnace shipment (which at that point was almost a year late). There was no new consideration for Supplement No. 3. Defendant never gave its required consent to the changes. The blackmail of ULBA is evident. "Sign this exculpation of our wrongful conduct or let your officers go to the Kazakstan prison for three years, and you never receive the second furnace" (see exhibit "A" to the attached affidavit).

14) The court completely ignores the wording of paragraph 2 of the Consent and Agreement which reads as follows:

"Neither Lessee (ULBA) nor Vendor (plaintiff) may consent to any modification of the Purchase Agreement or any documentation relating thereto without the prior consent of Lessor" ( Defendant). [parties' identification added for clarification)

15) The court did not find any of the contracts ambiguous, therefore the contract clauses are not subject to interpretation. The court did not find the contracts ambiguous because they are not. The contracts are normal international contracts concerning the purchase of two furnaces from a New Jersey manufacturer by ULBA, a Kazakstan corporation , with very strict delivery dates that were understood and agreed to by all parties. Because the failure of a timely delivery of the furnaces exposed the officials of ULBA to three year prison terms, it was not just

a minor point (exhibit "A" to the affidavit). The delivery terms were precise and easily determinable. Plaintiff was protected against force majeure by very specific terms of Paragraph 11 of the Purchase Contract. But Plaintiff never invoked the force majeure provisions, nor did Plaintiff give any valid excuse for the up to eleven month delay. Should Defendant be penalized for Plaintiff's failure? The court seems to approve (opinion page 6) the statements in the affidavit of Fred Stuffer attached to Plaintiff's motion regarding the reasons for Plaintiff's delay, but March 2008, is a little late to be trying to justify their delays, with no credible records attached to back it up. The statements by Fred Stuffer are self serving and hearsay. The affidavit was properly objected to in Defendant's Response to Plaintiff's Motion for Summary Judgment. The affidavit does not show good cause because there was no good cause. The truth as shown by the belated discovery produced by Plaintiff is that they didn't order the tungsten, and various parts and equipment until **after** the initial delivery dates had passed and that Plaintiff failed to timely inform Defendant and ULBA of the true delayed status that was known to Plaintiff. For proof of this see the affidavit of John Berry attached hereto as exhibit "1" with the attached Bates stamped records not supplied in discovery by Plaintiff until after April 1, 2008, and which shows Plaintiff had no good cause for shipping delays (exhibits "B" & "C" to the affidavit).

16) The court (opinion page 11) searches for a definition of "default" but the word is easily understood and the term "breach of contract" is also easily understood. The breach of agreement by Plaintiff by failing to ship the first furnace by June 7, 2006, (or even offer a

timely vague excuse which would justify its actions), relieved Defendant of its obligation to make the further and additional Conditional Payments to Plaintiff, for as long as Plaintiff was in violation of the timely delivery requirements. Contractually, this required Plaintiff to pay specified interest payments to Defendant, which amount (not the Conditional Payments) would be retained by Defendant as an offset against any sums due Plaintiff. How can the court say Defendant should pay further Conditional Payments to Plaintiff when Plaintiff is in default of returning the Conditional Payments.

17) Plaintiff is guilty of a second breach of the clear express terms of paragraph 9 of the Consent and Agreement when it failed to return the Conditional Payment to Defendant, and most tellingly, guilty of a third breach by failing to send the specified interest on the Conditional Payment (Plaintiff's third unexplained, and unjustified breach of the contracts) which still has not been paid or credited to Defendant.

18) Defendant would show that the well settled law is that the court can't re-write the parties contracts and cannot allow un-excused acts in violation of the express terms of the signed contracts (opinion pages 7, 12 & 16). The contracts are backed by full consideration. No one has questioned this. No one has raised an allegation (which would be unfounded) that the contracts were unclear or ambiguous. On page 16, the court clearly rewrites the contract terms by ignoring the clear written words to which the parties had agreed. An examination of

the cases cited by the court on page 10 of the opinion show that they all favor a judgment for Defendant herein. In *Reilly v Rangers Mgmt, Inc., 772* S.W.2d 527,529-530 (Tex 1987), the court cites *Fox v Thoreson, 398 S.W. 2d 88,92 (Tex 1966)* as follows: "Language should be given its plain grammatical meaning unless it definitely appears that the intention of the parties would thereby be defeated" The court then found a fact issue similar to our fact issue of "whether failing to timely deliver the furnaces is a default", and reversed the summary judgment and remanded for trial. In *Neece v A.A.A. Realty Co, 332* S.W. 2nd 597,602 (Tex 1959), the court very clearly stated "In admitting parol evidence to explain this contradiction (a situation not present in the T-M case) we do not countenance a violation of the rule against disturbing the clear meaning of a written instrument".

19) The court (opinion pages 12 & 13) places some weight on the Supplement No. 3. The parties Consent and Agreement paragraph 2 is very specific that the terms of the original contracts which includes Supplement Nos 1 and No. 2 can not be modified without the prior consent of all three parties. Defendant not only didn't agree, but opposed the idea of relieving Plaintiff of the consequences of its unexplained actions. Thus the court should not consider Supplement No. 3 as an agreement that binds the parties (especially Defendant) for any reason.

20) The Contracts require payment of interest by Plaintiff on the Conditional Payments to Defendant upon 15 days written notice (see the Notice in Exhibit "D" hereto).

The written notice was served on Plaintiff by Defendant in accordance with the specific written terms of paragraph 9 of the Consent and Agreement. For the Plaintiff to have failed to pay this interest to Defendant and to not explain why it failed to do so, cannot be excused by the court for some reasons not allowed in the contracts.

21) Defendant did not breach any contract but Plaintiff did. Defendant was not required to continue to pay the purchase price (the Conditional Payments) to Plaintiff after Plaintiff breached three major provisions of the contract. How can Plaintiff be entitled to attorney's fees under any theory? Plaintiff is the one who caused the attorneys fees to be incurred by Plaintiff and Defendant. The Purchase Contract paragraph 10 provides that Plaintiff had to use arbitration to settle any dispute. Plaintiff ignored this requirement and instead brought this law suit, and sought even to bring two Kazakstan companies ULBA and KAZKOMERTZBANK) into the Texas law suit as Defendants, and to garnish the Hongkong Shanghai Banking Co. N.A. and both Kazakstan companies. How can Defendant not be entitled to its attorneys fees under the following provisions of the contracts:

A) The Consent and Agreement paragraph 7 which requires Plaintiff to indemnify Defendant in this suit from all expenses including attorneys fees, without limitation.

B) Defendant did not breach the contracts and fully complied with the terms by sending Plaintiff over $2.4 million, until Plaintiff materially breached the material parts thereof without excuse in June 2006.

C) Plaintiff breached the material terms of the contracts (failure to timely deliver, failure to return the Conditional Payments, failure to tender the stipulated interest to Defendant, and failure to follow the terms of Paragraph 10 of the Purchase Contract regarding arbitration in the event of a dispute, if the written form of claims did not settle the case);

D) Paragraph 10.2 of the Purchase contract states:

" This contract shall be fulfilled exactly in accordance with its terms and conditions." And "the parties shall follow the Rules of international trade interpretations INCOTERMS 2000 "

which this court has not followed.

And

E) Paragraph 7.2 of the Lease states:

"All terms and conditions of this Agreement covering the obligations of the parties shall be considered significant"

C. Conclusion

22) Defendant\counter plaintiff would show that the contracts are un-ambiguous and Defendant is entitled to have the contracts enforced as written, as provided in paragraph 10.2 cited above. For these reasons, Defendant\counter plaintiff asks the court to conduct a hearing with a court reporter, hear oral argument, and after the hearing, set aside its opinion of May 15, 2008 and proceed to the trial setting, or alternatively, set aside the May 15, 2008 opinion and send the case to arbitration under the provisions of the Purchase Contract paragraph 10 cited

above. Defendant prays for all further relief it may be entitled.

Respectfully Submitted:

BOUSQUET & DEVINE, P.C.

of Counsel

___/s/ Thomas G. Bousquet
Thomas G. Bousquet
ATTORNEY AT LAW
Federal Court No. 3285
State Bar # 02717000
9225 Katy Freeway # 103
Houston, Texas 77024
(713) 827-8000
(713) 713-827- 0096(fax)
ATTORNEY FOR DEFENDANT\
COUNTER PLAINTIFF

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above instrument has been served, pursuant to Federal Court Rules by First Class U.S. Mail, Return Receipt Requested, postage pre-paid and properly addressed, all as shown by the following Service List, on this 27 day of May, 2008.

H. Miles Cohn
Sheiness, Scott, Grossman & Cohn
1001 McKinney St, Suite 1400
Houston, Texas 77002-6420

___/s/ Thomas G. Bousquet________
Thomas G. Bousquet

**EXHIBIT "1"**
**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **T-M VACUUM PRODUCTS, INC.** | § | |
| **Plaintiff** | § | |
| | § | |
| | § | |
| | § | **CIVIL ACTION NO. H-07-4108** |
| **V** | § | **JURY** |
| | § | |
| | § | |
| **TAISC, INC. D/b/a GLOBAL** | | |
| **LEASE SOLUTIONS** | § | |
| **Defendant** | § | |

**AFFIDAVIT OF JOHN BERRY**

STATE OF TEXAS

COUNTY OF HARRIS

Before me, the undersigned authority, on this day personally appeared JOHN BERRY, known to me to be the person whose name is subscribed to this instrument, and having been by me duly sworn, upon his oath deposes and states as follows:

1. My name is JOHN BERRY. I am over the age of 21 years, am an adult resident of Houston, Harris County, Texas, and am fully competent and able to testify herein. I am the president of TAISC, INC. I have never been convicted of a felony or a crime involving moral turpitude. I am competent and capable of making this affidavit. I have personal knowledge of the facts set forth herein and such facts are true and correct.

2. The Lease between the parties regarding the two furnaces to be manufactured by T-M VACUUM in New Jersey is attached to T-M VACUUM's petition as exhibit "B". The lease is executed by ULBA, GLOBALEASE and T-M VACUUM. On November 7, 2006, ULBA wrote T-M VACUUM a letter which acknowledges T-M VACUUM's default (see Exhibit "A" to the affidavit,). This letter of November 7, 2006, that ULBA wrote T-M VACUUM (Exhibit "A" hereto) stated that ULBA's officers faced three years in prison because of T-M's default in delivery, and that they (ULBA) are asking that $1,270,000 be sent to them by **GLOBALEASE**. This certainly sheds light on the gravity of T-M VACUUM's defaults and the bad position in which it left GLOBALEASE.

3. Attached hereto as Exhibits "B" and "C" are a portion of the T-M VACUUM's Bates stamped records belatedly sent to GLOBALEASE in production while this motion was pending. These records shows T-M VACUUM never ordered the tungsten and various pieces of equipment until the furnace delivery dates were long passed. Further that T-M VACUUM knew in late 2006 that it could not ship the second furnace until June 2007, and did not notify ULBA of this fact until it pressured ULBA into signing the self serving Supplement No. 3 .

4. The Purchase Contract calls for T-M VACUUM to ship the first Furnace Unit by June 7, 2006. This Unit was shipped 6 months late without a legitimate excuse. The second Furnace Unit was due to be shipped July 5, 2006. It was not shipped until June 5, 2007 (11 months late) and not received and approved by ULBA until October 5, 2007.

5. I notified T-M VACUUM of T-M VACUUM's default under Article 4.1 of the

Purchase Contract on or about November 8, 2006, (Exhibit "D" hereto) and T-M VACUUM never replied. Nor did it return the Conditional Payments to GLOBALEASE in November 2006, nor pay the $484,555.64 in interest under the Consent and Agreement, Article 9 (at the stated interest rate of 12% per annum, on the Conditional Payments through October 5, 2007. T-M VACUUM has also never paid ULBA the accrued late shipment penalties, as contained in the Purchase Contract, paragraph 9.1. T-M VACUUM has never offered to pay the attorney's fees pursuant to the Consent and Agreement paragraph 7, that GLOBALEASE has incurred following T-M VACUUM's breach of contract terms. These attorney's fees now total $65,000.00. Nothing was ever paid to or tendered to GLOBALEASE by T-M VACUUM, and no offsets or credits, to which I was entitled, have been given to GLOBALEASE. T-M VACUUM agreed to indemnify GLOBALEASE against its costs, attorneys fees and damages in the Consent and Agreement paragraph 7, but has failed to do.

6. I gave the fifteen day written demand required by the Consent and Agreement (Exhibit "D" hereto) to T-M VACUUM on or about November 8, 2006. After I sent such letter, T-M VACUUM was to send GLOBALEASE back the Conditional Payments plus pay 12% per annum interest thereon until such payments are paid to GLOBALEASE.

7. T-M VACUUM has never suggested to me that we handle the claims pursuant to the terms of the Purchase Contract paragraph 10, by submitting the matters by claim and then, if the matter does not settle, to arbitration.

Plaintiff did nothing.

Further affiant saith not.

JOHN BERRY

Subscribed and sworn to before me by the said JOHN BERRY on this 26th day of May, 2008.

LYNDA HOLLEY
Notary Public, State of Texas
My Commission Expires
March 21, 2009

Notary Public in and for
the State of Texas

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **T-M VACUUM PRODUCTS, INC.** | § | |
| | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| | § | |
| | § | **CIVIL ACTION NO.07-4108** |
| **V** | § | |
| | § | **JURY** |
| | § | |
| | § | |
| **TAISC, INC. d/b/a GLOBAL** | § | |
| **LEASE SOLUTIONS** | § | |

**Defendant**

ORDER

The court WITHDRAWS ITS OPINION OF MAY 15, 2008 AND SETS ASIDE THE SUMMARY JUDGMENT.

Signed this _______ day of ________________, 2008

______________________________
JUDGE