**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **T-M VACUUM PRODUCTS, INC.** | �ončování | |
| | ✪ | |
| **Plaintiff** | ✪ | |
| | ✪ | |
| | ✪ | |
| | ✪ | **CIVIL ACTION NO.07-4108** |
| **V** | ✪ | |
| | ✪ | **JURY** |
| | ✪ | |
| | ✪ | |
| **TAISC, INC. d/b/a GLOBAL** | ✪ | |
| **LEASE SOLUTIONS** | ✪ | |
| | ✪ | |
| **Defendant** | ✪ | |

<u>DEFENDANT COUNTER PLAINTIFF'S  MOTION FOR NEW TRIAL</u>

Defendant\Counter Plaintiff asks the court to set an oral hearing and on such hearing

to grant a new trial, all as authorized by Federal Rule of Civil Procedure 59.

<u>A.  Introduction</u>

1.   Plaintiff\counter Defendant  is T-M VACUUM PRODUCTS, INC. (Herein "T-M"

or "T-M VACUUM"); Defendant\counter Plaintiff  is TAISC INC. d/b/a GLOBALEASE

SOLUTIONS (herein "GLOBALEASE").

2.   T-M  VACUUM  sued  GLOBALEASE  for  debt  under  three  written  contracts.

Defendant\counter Plaintiff  counter claimed against T-M VACUUM for breach of the three

contracts, debt and stipulated interest due  under a written contract, late fees, attorneys' fees

and costs.  GLOBALEASE counter claimed because T-M VACUUM's two breaches of the

contracts prevented GLOBALEASE from returning the lease payments totaling $1,270,000 to ULBA prior to 12-31-06 (See Exhibit A hereto). GLOBALEASE had already paid T-M $2.9 million on the purchase price.  If T-M VACUUM had not breached its contract and had returned the Conditional Payments to GLOBALEASE, GLOBALEASE would  have been financially able to send the $1,270,000 to ULBA and ULBA's manager (president) would not have been faced with three years in jail.  ULBA's letter (Exhibit A) is very clear: they receive back the $1,270,000 by 12-31-06 or receive complete delivery of the furnaces ULBA had purchased by 12-31-06 or the manager goes to jail.  Because of  T-M VACUUM's second breach of both options, ULBA was forced to continue to press for delivery of the two furnaces in hopes of keeping its manager out of jail.

T-M VACUUM should not be allowed to profit from its multiple breaches of the contract and unfair pressure on ULBA and its manager (president).  It is very important that GLOBALEASE could not logically send $1,270,000 to ULBA after it had already sent $2,900,000 to T-M VACUUM.  That would leave GLOBALEASE in a deficit $4,170,000 position, no furnaces in sight and no deliveries anticipated, and no means to recoup same. ULBA, like GLOBALEASE, had no actions that it could take under the contract following T-M VACUUM's default.  T-M VACUUM was the only party in a position that had a physical act to perform, ie. manufacture and deliver the furnaces or return conditional payments by 12-31-06.  GLOBALEASE and ULBA were at the mercy of T-M VACUUM if T-M VACUUM chose to ignore their demands following T-M 's default.

3.   In November, 2006, GLOBALEASE had already sent T-M $2,900,000 in Conditional Payments on the purchase price and ULBA had sent $1,270,000 to GLOBALEASE in lease payments. T-M was 5 months late in manufacturing and delivering   the two complex furnaces.  ULBA and GLOBALEASE were faced with the dilemma that they did not know when or if T-M would ever complete the furnaces and most importantly, that upon delivery whether these very complex machines would pass ULBA's testing to see if they would create the desired computer chip materials at incredibly high temperatures.  These were not ordinary furnaces.

4.   The court rendered its summary judgment in favor of T-M VACUUM on T-M VACUUM's claim and against GLOBALEASE's counter claim without oral arguments. GLOBALEASE earnestly requests this court set oral argument on the motion for new trial and grant a new trial following the arguments.    The court entered its judgment on July 16, 2008.  Defendant\counter Plaintiff  files this motion on July 24, 2008, which is within ten working days after the entry of judgment.

<u>B. Manifest Errors of Law and Facts</u>

5.   The court should grant a new trial because the court committed manifest errors of law and fact.  *Brown v. Wright*, 588 F.2d 708, 710 (9th Cir. 1978).

6.   A Plaintiff moving for summary judgment must satisfy its burden by submitting summary judgment proof that establishes all elements of its cause of action as a matter of law.  *San Pedro v. United States*, 79 F.3d 1065, 1068 (11th Cir. 1996).  This burden is

satisfied only if, after viewing the evidence in the light most favorable to Defendant, no genuine issues of material fact exist and no reasonable trier of fact could find in favor of Defendant. *Walmart v Rodriguez*, 92 SW3rd 502 (Tex 2002).  The inferences that are in favor of the non-movant, trump all other inferences that may exist.  *Orangefield I.S.D. v Callahan*, No. 09-00-171-CV, 2001 Tex (Beaumont-2001).  GLOBALEASE attached a list of fact issues to its Response to Plaintiff's Motion for Summary Judgment as exhibit 1.  Most of these issues remain unresolved which should prevent the granting of the summary judgment.

7.    In determining whether there is a disputed issue of material fact that prevents summary judgment, the court must consider all evidence in the light most favorable to Defendant as the non-movant.  *Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1236-37 (10th Cir. 2002).  The court must also resolve all reasonable doubts about the facts in favor of the Defendant as nonmovant.  *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 456 (5th Cir. 2005). This court has considered all evidence in a light more favorable to the proponent of the summary judgment and has  resolved the doubts on material issues in favor of the moving party, an error of law which must be corrected.

8.   Courts have long recognized that parties are free to contract as they choose and that they may protect themselves by requesting literal performance of their contractual conditions for final payment. *TA Operating v. Solarapplications*, 191 S.W.3d 173, 181 (Tex.App.– San Antonio 2005, no writ)(citing 8 CORBIN ON CONTRACTS § 36.2 ("Theoretically, at least,

people are free to contract as they choose, limiting their rights and duties in ways that are unusual or absurd or unprofitable."). Courts have further acknowledged that harsh and unprofitable results may follow from the parties' free exercise of choosing their own contract terms. *TA Operating* at 181 (court recognized the harsh results occasioned from Solar's failure to perform the express condition precedent in the contract).

If a contract is ambiguous, a fact issue exists on the parties' intent that may be properly submitted to the trier of fact. See *J.M. Davidson, Inc.*, 128 S.W.3d at 229; *Universal Health Servs., Inc. v. Renaissance Women's Group, P.A.*, 121 S.W.3d 742, 746 (Tex. 2003). If the contract is not susceptible to more than one meaning, ie. unambiguous, then the court enforces it as written and as a matter of law.

9. T-M VACUUM made additional profits to those contemplated (actually, all $2.9 million plus interest thereon as profit if the furnaces were never manufactured and interest on the $2.9 million for over a year, if they are manufactured and accepted) and ULBA's manager was faced with jail. T-M VACUUM both failed to timely deliver an acceptable furnace, and failed to return the Conditional Payments and interest to GLOBALEASE. In that fact situation, which is what actually happened, GLOBALEASE could not continue to pay T-M VACUUM on the purchase price, and was unable to send the $1,270,000 in lease payments back to ULBA by 12-31-06. Because T-M VACUUM was able to keep the $2,900,000 Conditional Payments without having to manufacture the furnaces and without having to return it to GLOBALEASE, they received an extra benefit because they had the

use of the $2.9 million for well over one year, without having the expense of manufacturing the furnaces.  This court is awarding T-M VACUUM this extra benefit by finding some clauses of the contract to enforce (Memorandum and Opinion page 8) and ignoring other relevant clauses urged by Defendant.  The contracts specifically provided that extra interest earned by T-M VACUUM had to be sent to GLOBALEASE in the event of T-M's default. This is the clear terms of the contracts!

10.  This court has stated in its Memorandum and Opinion of July 16, 2008, on  pg. 8 that GLOBALEASE was not damaged by T-M VACUUM's actions and failures, which has to include T-M VACUUM's failure in November 2006, to pay $484,000 in interest on the $2.9 million Conditional Payments to GLOBALEASE.  The contract does not require that GLOBALEASE be damaged before the Conditional Payments are to be returned to GLOBALEASE and the stated interest is paid to GLOBALEASE. The contract only required T-M VACUUM to fail to correct its failure to timely deliver the Furnaces following 15 days notice in writing by GLOBALEASE (Exhibit D).   If the contract states with no restrictions that the interest on the Conditional Payments is to be paid by T-M VACUUM to GLOBALEASE, how can the court say that failure to pay GLOBALEASE approximately $484,000.00 in interest  did not damage GLOBALEASE?  Further, this default by T-M VACUUM threw GLOBALEASE into a position of financial difficulty so it could not help ULBA and left ULBA's manager at the mercy of T-M VACUUM. No one has ever alleged the contract is ambiguous. If T-M VACUUM had sent the Conditional Payments to

GLOBALEASE, GLOBALEASE would have sent ULBA the $1,270,000 to keep the government from triggering the prison sentence in accordance with Exhibit A.   T-M VACUUM's second default was done intentionally by T-M  to give T-M VACUUM the ability to deliver the furnaces eleven months late and force ULBA to accept the late delivery to try to keep their manager out of jail. The Conditional Payment would have been repaid to T-M VACUUM by GLOBALEASE in October  2007, when the actual  delivery of the second furnace took place and was accepted by ULBA.  It is not reasonable to say that Supplement No. 3, dated in May of 2007, without GLOBALEASE's required consent, without consideration and with a gun to the head of ULBA's manager waived defaults by T-M VACUUM that occurred eleven months previous in time. (See paragraph 2, Consent and Agreement).

Paragraph 7.8 of the Lease reads,

"All amendments and supplements to the agreement shall be made in written form and are an integral part of the agreement and have equal legal effect only upon their signature and sealing by authorization of the Parties"

NOTE: "Parties is a defined term under Glossary 1.2:

"1.2  Parties- Lessor, Lessee or Supplier, as the use of the term collectively to all participants of the agreement."

Further, was not GLOBALEASE damaged when T-M VACUUM files a law suit rather then attempting  to settle the dispute pursuant to the terms of the contract (i.e. settlement discussions and if these fail then arbitration)?

11.   The court erred in stating in the Memorandum and Opinion of July 16, 2008,

on pages 7 & 8 that GLOBALEASE must either cancel the contract or accept both the T-M

VACUUM's breach of timely delivery and also T-M's failure to pay GLOBALEASE the

Conditional Payments and the interest set out in the contract.

Paragraph 7.3 of the lease covers this point fully:

"Failure to fulfill obligations under the Agreement because of the
circumstances beyond the Parties' control shall not result in the termination
of the obligations under the Agreement or possible cancellation of this
Agreement."

Besides the above terms which prevent GLOBALEASE and ULBA from having to

cancel the contract, the contract, being an international sales contract, had provisions to cover

all contingencies.  If T-M VACUUM was late in delivery of the furnaces, the contracts did

not  contemplate that the contracts had to be cancelled.  In such event, if T-M VACUUM

had not exercised its rights under the force majeure  clause of paragraph 11 of the Purchase

Contract, then T-M VACUUM was to return the Conditional Payments (Note: they were

called "Conditional Payments") to GLOBALEASE with interest and then GLOBALEASE

would return $1,270,000 to ULBA.  This coupled with Kazakstan Law would allow the

contract to continue without the ULBA manager ( its president) having to worry about three

years in jail.  When ULBA received the $1,270,000 from GLOBALEASE due to T-M

VACUUM's breach, one of two things were to happen:

(1) ULBA would cancel the purchase and ULBA and GLOBALEASE would be whole,

or,

(2) ULBA (afraid of the three year prison sentences for its president  as fully set forth

in Berry's Exhibit A hereto) would return the $1,270,000 to GLOBALEASE by January 10, 2007 (see Exhibit A) and allow T-M VACUUM to deliver the furnaces late, and at the time of ULBA's accepted delivery and successful testing, the Conditional Payments would be sent back to T-M VACUUM by GLOBALEASE and the balance of the purchase price would be paid by GLOBALEASE, with GLOBALEASE keeping the interest. This is to prevent T-M VACUUM from being unjustly enriched by T-M VACUUM keeping the $2,900,000 and using the money for over one year earning interest thereon and using it to make money in its business. These are the plain language terms of the parties. Signed, sealed and delivered. No ambiguity. Everyone would be expected to live by their written word.

12. The Court has stated in its Memorandum and Opinion of July 16, 2008, on pages 7 & 8 that if GLOBALEASE would keep the interest on the Conditional Payment as provided in the contracts, GLOBALEASE would receive more than the benefit of its bargain. However, this result is exactly pursuant to the terms of the written contract. Is the court saying some of the terms of the contract should not be enforced? T-M VACUUM and GLOBALEASE negotiated this clause that the court is saying is not part of the bargain negotiated by the parties. The court can not pick and choose the clauses it wishes to enforce and ignore others.

"Courts cannot make new contracts between the parties, but must enforce the contracts as written." *Royal Indemnity Company v. Marshall*, 388 S.W. 2d 176, 181 (Tex 1965). Courts may not rewrite the parties' contract "or add to its language under the guise of

interpretation". *Helmerich & Payne Inter'l Drilling Co. V. Swift Energy Co.*, 180 S.W.3d 635, 641 (Tex.App.–Houston [14[th] Dist] 2005, no pet.).   Rather, the court must enforce the whole contract, as written and signed.  *See*, *Royal Indem. Co. V. Marshall*, at 181.  "Words and phrases in contracts should be given their ordinary, popular, and commonly accepted meanings", *Dedier v. Grossman*, 454 S.W.2d 231, 235 (Tex.Civ.App.–Dallas 1970, writ ref'd n.r.e.), and "contract language should be accorded its plain, grammatical meaning." *Lyons v. Montgomery,*  701 S.W.2d 641, 643 (Tex 1985).  It is the instrument alone that is to express the parties' intentions, "for it is objective and not subjective intent that controls". *Ohio Oil Co. V. Smith*, 365 S.W.2d 621 (Tex 1965).

GLOBALEASE is satisfied with an offset of the contractually agreed interest plus payment of GLOBALEASE's attorneys' fees because of the (1) the express terms of the contracts, (2) breaches of the contract by T-M VACUUM,  (3) the indemnity provisions of the Consent and Agreement paragraph 7 which indemnifies GLOBALEASE in the event of a suit being filed against GLOBALEASE and  (4)  T-M VACUUM brought a law suit rather than utilize the settlement and arbitration provisions of the Purchase Contract, paragraph 10 to settle its dispute.

13.    A reading of pages 1-2 and 7 of the court's Memorandum and Opinion of July 16, 2008, shows the court is making findings which are not supported by any evidence. For example:

A)    "this court granted T-M's motion for summary judgment finding that based on

**undisputed** evidence, T-M  is entitled to recover the balance of the purchase price  for the

two furnaces as well as prejudgment interest........." (Page 2) emphasis added

    The only undisputed evidence is:

1)    The three contracts were signed by the parties;

2)    T-M VACUUM delivered one furnace 5 months late and one furnace eleven months late;

3)    That GLOBALEASE did not consent to Supplement 3;

4)    That GLOBALEASE notified T-M VACUUM of its default in delivery of the furnaces by letter (Exhibit D) on November 8, 2006, and invoked the contracts 15 day default provisions.

5)    That T-M VACUUM did not remedy the default in delivery by November 23, 2006 (15 days);

6)    That T-M VACUUM never returned the Conditional Payments or interest to GLOBALEASE, as required by the contracts;

7)    That T-M VACUUM has offered no valid excuse for its failure to deliver the furnaces to ULBA on a timely basis; and

8)     ULBA had to receive back the $1,270,000 lease payments from GLOBALEASE by 12-31-06, or else its manager faced a three year jail sentence (Exhibit A); and

9)     If GLOBALEASE had sent back the $1,270,000 to ULBA without

GLOBALEASE  receiving the Conditional Payments and interest from

T-M, GLOBALEASE would have been out of pocket $4,170,000 with

little or no hopes of recovering this money as T-M had not begun

manufacturing the furnaces, and ULBA had the right to terminate the

contracts, without penalty .

Shouldn't this extra expense be paid by the defaulting party?

The law is very clear that the court must consider all evidence in the light most

favorable to GLOBALEASE as the non-movant.  *Garcia v. Pueblo Country Club*, 299 F.3d

1233, 1236-37 (10th Cir. 2002).  The court must also resolve all reasonable doubts about the

facts in favor of the GLOBALEASE as non movant.  *Cooper Tire & Rubber Co. v. Farese*,

423 F.3d 446, 456 (5th Cir. 2005).

B)    The court stated on page 7 " GLOBALEASE did not treat T-M VACUUM as

being in default. GLOBALEASE did not exercise its right to cancel the contracts if the

furnaces were not delivered on time".

GLOBALEASE not only treated T-M VACUUM as being in default, but sent

(Exhibit D) a letter declaring T-M VACUUM in default and invoking the default provisions

of their contract.  ULBA treated T-M VACUUM as being in default (Exhibit A).  They were

not required to cancel the contract ( see argument in article eleven  hereof).   If T-M

VACUUM breaches the contracts by failing to timely deliver the furnaces, and breaches the

contracts by failing to return the Conditional Payments and interest to GLOBALEASE, T-M

VACUUM prevents  GLOBALEASE from returning the $1,270,000 to ULBA. This puts a gun at the head of the manager of ULBA and leaves ULBA with the only recourse to somehow get T-M VACUUM to deliver the furnaces before their manager is put in jail.

C)    "that T-M VACUUM was underline to deliver the furnaces by the original delivery deadlines". (emphasis added)

This is supported by no credible evidence.  The only evidence is that they didn't deliver the furnaces by the original delivery deadlines.  There is a huge difference.  The contract provided a force majeure clause which T-M VACUUM never even attempted to use, as it did not apply.  The exhibits furnished herewith (Exhibits B and C) show that T-M VACUUM never ordered the materials and parts for the furnaces until long after the deadlines were past. T-M VACUUM has never refuted this or shown a reason for late performance.

D)    That " that GLOBALEASE received all of its payments from ULBA".   There is no evidence of this as shown by T-M VACUUM's attempt to garnish lease payments which remain unpaid by ULBA to GLOBALEASE.

E)    " GLOBALEASE withheld the balance due on the grounds that the furnaces were not delivered within the original deadlines". (Emphasis added)

GLOBALEASE withheld the payments based on the written  notice it gave T-M VACUUM of its default in delivery, and in T-M VACUUM's (1)  ignoring the  letter declaring it in default; (2) T-M VACUUM ignoring the specific terms of the clearly written contract that governed a default that required T-M to return the Conditional Payments and

interest thereon to GLOBALEASE, and  (3) putting a gun at the head of the manager of ULBA and leaving ULBA with  only the hope to somehow get T-M VACUUM to deliver the furnaces before their manager is put in jail.

The court ignores the fact that the <u>first</u> furnace shipment was made five months before the date of the Supplement No. 3 , which date was also less than 30 days before the <u>last</u> furnace shipment (which at that point was almost a year late).   There was no new consideration for Supplement No. 3.   The blackmail of ULBA is evident.  "Sign this Supplement 3 or let your president go to the Kazakstan prison" (see exhibit **C** to the attached affidavit).  This unfair hold on ULBA was achieved by T-M VACUUM by failing to return the Conditional Payments and interest as provided in the contracts.

14.    The court completely ignores the wording of paragraph 2 of the Consent and Agreement  as follows:

> "Neither Lessee (ULBA) nor Vendor (T-M) may consent to any modification of the Purchase Agreement or any documentation relating thereto without the prior consent of Lessor"( GLOBALEASE). [the parties' identification added for clarity]

This means that Supplement Three is of no force or effect because GLOBALEASE did not consent.

15.    The court did not find the contracts ambiguous, therefore the contract clauses were  not subject to interpretation. The court did not find the contracts ambiguous because they are not.  The contracts  set forth a simple international contract concerning the purchase of two furnaces from a New Jersey manufacturer by ULBA, a Kazakstan corporation , with

very strict delivery dates that were understood and agreed to by all parties. Because the failure of a timely delivery of the furnaces exposed the officials of ULBA to three year prison terms, it was not just a minor point.  The delivery terms were precise and easily determinable.  T-M VACUUM was protected against force majeure by very specific terms of Paragraph 11 of the Purchase Contract.  The Plaintiff never invoked the force majeure provisions, nor did T-M VACUUM give any valid excuse for the up to eleven month delay.  The court seems to ignore T-M VACUUM's lack of credible records to back up the statements in T-M VACUUM's president's affidavit attached to the motion for summary judgment. Further GLOBALEASE has objected that the  Affidavit is filled with self serving and hearsay statements.  The affidavit does not show good cause for delay in delivering the furnaces because there was no good cause.  The truth as shown by belated Response to Production produced by T-M VACUUM is that they didn't order the tungsten, and various parts until after the initial delivery dates. For proof of this see the  affidavit of John Berry attached hereto as exhibit "1" with the attached  Bates stamped records  supplied by T-M VACUUM  in discovery,  which show T-M VACUUM has no good cause (exhibits B and C thereto).

16.  The breach of the contracts by T-M VACUUM on June 7, 2006 by failure to deliver the first furnace by June 7, 2006, (or even offer  a timely vague excuse which would justify its actions) coupled with T-M VACUUM's breach by failing to send the Conditional Payments  and  interest  thereon  to  GLOBALEASE  15  days  following  receipt  from GLOBALEASE of  Exhibit D by T-M VACUUM,  relieved GLOBALEASE of its obligation

to make the additional purchase payments to T-M VACUUM.  This was true for as long as T-M VACUUM was in violation of the timely delivery requirements.  Contractually, T-M's being in default required T-M VACUUM to pay specified interest payments to GLOBALEASE, which amount (not the Conditional Payments) would be retained by GLOBALEASE as an offset against any sums due T-M VACUUM. The court must understand the intricate wording of the three contracts.  If T-M VACUUM failed to deliver the furnace by 12-31-06, then ULBA had to receive back $1,270,000 from GLOBALEASE. If T-M VACUUM failed in timely delivery. ULBA had to receive the $1,270,000 in lease payments  it had paid to GLOBALEASE back by 12-31-06.   ULBA had to accomplish one of these two options. Otherwise ULBA's  manager faced three years in jail (Exhibit A).  If after failure to timely delivery the furnaces T-M VACUUM failed to return the Conditional Payments  and  interest  to  GLOBALEASE,  then  GLOBALEASE  could  not  return  the $1,270,000 to ULBA (See Exhibit A for effect on ULBA).  T-M VACUUM's two breaches puts a gun to the head of ULBA's manager.  ULBA would have returned the $1,270,000 to GLOBALEASE by January 10, 2007 (Exhibit A). Then when  T-M VACUUM delivers the furnaces, it would get the Conditional Payments back.  This simple plan won't work if T-M VACUUM breaches the contract twice.

17.  T-M VACUUM is guilty of  a second breach of the clear express terms of paragraph 9 of the Consent and Agreement when it failed to return the Conditional Payment to GLOBALEASE, and most tellingly, the third breach by failure to send the specific interest

on the Conditional Payment (T-M VACUUM's third unexplained, and unjustified breach of the contracts) which still has never been paid or credited to GLOBALEASE.

18.   GLOBALEASE would show that the court can't re-write the parties contracts and cannot allow un-excused acts in violation of the express terms of the signed contracts. The contracts are backed by full consideration, that no one has questioned.  No one has raised an allegation ( which would be unfounded)  that the contracts were unclear or ambiguous.

An examination of the cases cited by the court on page 10 of its first opinion show that they all favor a judgment for GLOBALEASE herein. In *Reilly v Rangers Mgmt, Inc., 772* S.W.2d 527,529-530 (Tex 1987), the court cites *Fox v Thoreson, 398 S.W. 2d 88,92 (Tex 1966)* as follows*: "*Language should be given its plain grammatical meaning unless it definitely appears that the intention of the parties would thereby be defeated" The court then found a fact issue similar to our fact issue of "whether failing to timely deliver the furnaces is a default", and reversed the summary judgment and remanded for trial.  *Neece v A.A.A. Realty Co, 332* S.W. 2nd 597,602 (Tex 1959), the court very clearly stated "In admitting parol evidence to explain this contradiction (not present in the T-M VACUUM case) we do not countenance a violation of the rule against disturbing the clear meaning of a written instrument".

19.   The parties Consent and Agreement , paragraph 2 is very specific that the terms can not be modified without the prior consent by <u>all </u>three parties.  GLOBALEASE not only didn't agree, but opposed the idea of relieving T-M VACUUM of the consequences of its

unexplained actions. Thus the court should not consider the Supplement No. 3 for any reason.

20.   The Contracts requires payment of interest on the Conditional Payments to GLOBALEASE  by T-M VACUUM upon 15 days written notice, (see exhibit D hereto) which written notice was served on T-M VACUUM by GLOBALEASE in accordance with the specific written terms of paragraph 9 of the Consent and Agreement. For the T-M VACUUM to have failed to pay this, and to not explain why they failed to do so, cannot be excused by the court for some reason not allowed by the contracts. This failure by T-M VACUUM prevented GLOBALEASE from returning $1,270,000 to ULBA as requested in Exhibit A.

## C. ATTORNEYS FEES

21.    GLOBALEASE  did not breach its contract but T-M VACUUM did. GLOBALEASE was not required to continue to pay T-M VACUUM after T-M VACUUM had breach three major provisions of the contract.   How can T-M VACUUM be entitled to attorneys fees under any theory. T-M VACUUM is the one who caused the attorneys fees to be incurred by GLOBALEASE.  The Purchase Contract, paragraph 10 provides that T-M VACUUM had to use arbitration to settle any dispute.   T-M VACUUM ignored this requirement and brought suit, seeking even to bring two Kazakstan companies into the Texas law suit, and to garnish the Hongkong Singapore  Banking Co. N.A.  and both Kazakstan companies.  How can GLOBALEASE not be entitled to its attorneys fees under the following provisions of the contracts:

A)    The Consent and Agreement paragraph 7 which requires T-M VACUUM to

indemnify GLOBALEASE in this suit from all expenses including attorneys fees,

without limitation.

B)      GLOBALEASE did not breach the contracts and fully complied with

them until after T-M VACUUM materially breached the material parts thereof

without excuse in June 2006.

C)   T-M VACUUM did breach the material terms of the contracts (failure to timely

deliver, failure to return the Conditional Payments, failure to tender the stipulated

interest to GLOBALEASE, and failure to follow the terms of Paragraph 10 of the

Purchase Contract including arbitration if the written form of claims in the event of

a dispute,  did not work).   And the fourth reason:

D)   Paragraph 7.2 of the Lease states:

"All terms and conditions of this Agreement covering the obligations of the
parties shall be considered significant"

## D.  Conclusion

21.    Defendant\counter Plaintiff would show that the contracts are un-ambiguous and

GLOBALEASE is entitled to have the contracts enforced as written, and  as provided in

paragraph 10.2 cited above.   The cases cited above requires that:

a) the court must consider all evidence in the light most favorable to GLOBALEASE as

the non-movant;

B)   The court must also resolve all reasonable doubts about the facts in favor of

GLOBALEASE as non movant;

C) Courts cannot make new contracts between the parties, but must enforce the contracts as written;

D) Courts may not rewrite the parties' contract or add to its language under the guise of interpretation.

Rather, the court must enforce the whole contract, as written and signed.

For these reasons, Defendant\counter Plaintiff asks the court to conduct a hearing on the motion for new trial  and, after the hearing, grant a new trial.  GLOBALEASE prays for all relief it may be entitled.

Respectfully Submitted:

BOUSQUET & DEVINE, P.C.                          ___/s/ Thomas G. Bousquet

of Counsel                                       Thomas G. Bousquet
                                                 ATTORNEY AT LAW
                                                 Federal Court No.  3285
                                                 State Bar # 02717000
                                                 9225 Katy Freeway # 103
                                                 Houston, Texas 77024
                                                 (713) 827-8000
                                                 (713) 713-827- 0096(fax)
                                                 ATTORNEY FOR DEFENDANT
                                                 COUNTER Plaintiff

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the above instrument has been served, pursuant to Federal Court Rules by First Class U.S. Mail, Return Receipt Requested, postage pre-paid and properly addressed, all as shown by the following  Service List,  on this 24 day of July, 2008.

  H. Miles Cohn
  Sheiness, Scott, Grossman & Cohn
  1001 McKinney St, Suite 1400
   Houston, Texas 77002-6420

      ___/s/ Thomas G. Bousquet_____
      Thomas G. Bousquet

EXHIBIT "1"

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **T-M VACUUM PRODUCTS, INC.** | ✆ | |
| | ✆ | |
| **Plaintiff** | ✆ | |
| | ✆ | |
| | ✆ | |
| | ✆ | **CIVIL ACTION NO.07-4108** |
| **V** | ✆ | |
| | ✆ | **JURY** |
| | ✆ | |
| | ✆ | |
| **TAISC, INC. d/b/a GLOBAL** | ✆ | |
| **LEASE SOLUTIONS** | ✆ | |
| | ✆ | |
| **Defendant** | ✆ | |

## <u>AFFIDAVIT OF JOHN BERRY</u>

STATE OF TEXAS            §
                         §
COUNTY OF HARRIS         §

Before me, the undersigned authority, on this day personally appeared JOHN BERRY,

known to me to be the person whose name is subscribed to this instrument, and having been

by me duly sworn, upon his oath deposes and states as follows:

1.      My name is JOHN BERRY. I am over the age of 21 years, am an adult resident of

Houston, Harris County, Texas, and am fully competent and able to testify herein.  I am the

president of TAISC, INC. d/b/a GLOBALEASE SOLUTIONS.  I have never been convicted

of a felony or a crime involving moral turpitude.  I am competent and capable of making this

affidavit.  I have personal knowledge of the facts set forth herein and such facts are true and correct.

2.      The parties executed three contracts. The Lease between the parties regarding the two furnaces to be manufactured by T-M VACUUM in New Jersey is attached to T-M VACUUM's petition as Exhibit "B".  The lease was executed by ULBA, GLOBALEASE and T-M VACUUM. On November 7, 2006, ULBA wrote T-M VACUUM and GLOBALEASE a letter which fixes T-M VACUUM's default (see exhibit "A" to the affidavit,). This November 7, 2006, letter that  ULBA wrote T-M VACUUM and GLOBALEASE (see Exhibit "A" hereto) stated   that ULBA's manager faced three years in prison because of T-M VACUUM's default in delivery, and are asking T-M VACUUM to assist them in having $1,270,000 that they had already paid to lease the furnaces, be sent back to them by GLOBALEASE.   Thus ULBA on 11-07-06 was forced to seek the $1,270,000 from GLOBALEASE to keep their manager from going to jail for three years.   Obviously GLOBALEASE could not send this money to ULBA, because GLOBALEASE would have been out of pocket the  $2.9 million plus $1.270 million. When T-M VACUUM failed pay the $2.9 million plus interest back to GLOBALEASE, this prevented GLOBALEASE from paying the $1,270,000 to ULBA BY 12-31–06  and thereafter ULBA was completely at T-M VACUUM'S  mercy if the furnaces weren't delivered.

3.      Attached hereto as Exhibits "B" and "C"  are the T-M VACUUM's Bates stamped records sent to GLOBALEASE in discovery  while the motion was pending. These  show T-

M VACUUM never ordered the tungsten and various pieces of equipment until the delivery date was long passed. Further that T-M VACUUM knew in late 2006 that they could not ship until June 2007, and did not notify ULBA of this fact until they got the bogus Supplement No. 3 signed by ULBA.

4.      The Purchase Contract calls for T-M VACUUM to ship the first Furnace Unit by June 7, 2006.  This Unit was shipped 6 months late without a legitimate excuse. ULBA needed one of two things to happen, and had no control over either one.  If the furnaces were not shipped by 12-31-06, then  ULBA must receive a refund of the $1,270,000 paid to GLOBALEASE.  If neither happened, ULBA's manager was facing three years in jail (See Exhibit A).  The second Furnace Unit was due to be shipped July 5, 2006. It was not shipped (11 months late) until June 5, 2007 and not received and finally approved by ULBA until October 5, 2007.

5.     I  notified T-M VACUUM  of T-M VACUUM's default under Article 4.1 of the Purchase Contract  on or about November 8, 2006, (Exhibit "D" hereto).  T-M VACUUM never replied to me nor did it return the Conditional Payments (due back to GLOBALEASE in November 2006) plus interest  under the Consent and Agreement, Article 9 (at the stated interest of 12% per annum   is interest owed to GLOBALEASE of $484,555.64 on the Conditional Payment through October 5, 2007, as specified in the Consent and Agreement). T-M VACUUM has never paid accrued late shipment penalties, as contained in the Purchase Contract, paragraph  9.1.  T-M VACUUM  has never offered to pay the attorney's fees that

GLOBALEASE has incurred following T-M VACUUM's breach of contract terms.  These attorney's fees now total $70,000.00.  This is pursuant to the Consent and Agreement paragraph 7. Nothing was ever paid to or tendered to GLOBALEASE by T-M VACUUM, and T-M VACUUM's demand reflects that no offsets or credits to which GLOBALEASE is entitled under the contracts have been given to GLOBALEASE.  T-M VACUUM has agreed to indemnify GLOBALEASE against its costs, attorneys fees an damages in this suit  (See the Consent and Agreement paragraph 7 ).

6.     On behalf of GLOBALEASE, I  gave the fifteen day written demand required by the Consent and Agreement to T-M VACUUM on or about November 8,  2006 (Exhibit D).  After GLOBALEASE sent such letter, T-M VACUUM was required within 15 days to  return the Conditional Payments plus pay 12%  interest for 11 months to GLOBALEASE.  This was not done.

7.     T-M VACUUM never suggested we handle the claims under Purchase Contract paragraph  10, by submitting the  matters by claim then arbitration. I would have  been agreeable to save attorney's fees.

T-M VACUUM did nothing.

Further affiant saith not.

_____/s/_____

JOHN BERRY


       Subscribed and sworn to before me by the said JOHN BERRY on this 24th day of July, 2008.


_____/s/_____

Notary Public in and for the State of Texas

**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

**T-M VACUUM PRODUCTS, INC.**　　　　⊗
　　　　　　　　　　　　　　　　　　⊗
**Plaintiff**　　　　　　　　　　　　⊗
　　　　　　　　　　　　　　　　　　⊗
　　　　　　　　　　　　　　　　　　⊗
　　　　　　　　　　　　　　　　　　⊗　　**CIVIL ACTION NO.07-4108**
**V**　　　　　　　　　　　　　　　　⊗
　　　　　　　　　　　　　　　　　　⊗　　**JURY**
　　　　　　　　　　　　　　　　　　⊗
　　　　　　　　　　　　　　　　　　⊗
**TAISC, INC. d/b/a GLOBAL**　　　　⊗
**LEASE SOLUTIONS**　　　　　　　　⊗
　　　　　　　　　　　　　　　　　　⊗
**Defendant**　　　　　　　　　　　　⊗

<u>ORDER</u>

The court GRANTS A NEW TRIAL.

Signed this _____ day of _____, 2008.

_____
JUDGE